# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | NO. 3:18-CR-39 |
| CHRISTOPHER BEREZNAK, | (JUDGE CAPUTO) |
| Defendant. | |

## MEMORANDUM

Presently before me is a Motion to Suppress filed by Defendant Christopher Bereznak ("Bereznak"). (Doc. 15.) Bereznak seeks to suppress text messages allegedly sent by him to AG, to whom he prescribed certain medications, on the grounds that the search of AG's phone violated his Fourth Amendment rights and that the text messages have not been authenticated. Bereznak also seeks to suppress data obtained from the Pennsylvania Prescription Drug Monitoring Program ("PDMP") on Fourth Amendment grounds. Because Bereznak's Fourth Amendment rights have not been violated, and because issues relating to the authentication of the text messages are premature at this stage, Bereznak's Motion to Suppress will be denied.

## I. Background

The grand jury Indictment filed on February 6, 2018, charges Bereznak with nine counts of Unlawful Distribution and Dispensing of a Controlled Substance under 21 U.S.C. § 841(a)(1) (the Controlled Substances Act ("CSA")). (Doc. 1.) All of the alleged violations took place in June or July 2016. *Id.* The Indictment alleges that, in or about May 2017, Bereznak began a personal relationship with AG via Craigslist that continued until the time of AG's death on or about July 20, 2016. *Id.* The Indictment further alleges that Bereznak made the alleged distributions of controlled substances to AG outside the usual course of a professional practice and not for a legitimate medical purpose. *Id.* Bereznak was a licensed Pennsylvania dentist at all relevant times (Doc. 1.)

On March 1, 2018, Bereznak filed the instant Motion to Suppress (Doc. 15), which includes the following factual assertions. On or about July 21, 2016, AG's parents contacted the Olyphant Police Department about text messages they found on AG's phone. *Id.* at ¶ 5. AG's parents turned the phone over to the police to investigate a "romantic relationship" between Bereznak and AG. (*Id.*; Doc. 6, Ex. 1.) Sometime between AG's death on or about July 20, 2016, and Bereznak's arrest on August 7, 2016, police allegedly forensically extracted 999 text messages from AG's cell phone without a warrant. *Id.* at ¶¶ 6-7. "The fruit of this warrantless search was directed solely at" Bereznak. *Id.* at ¶ 7. In addition, Bereznak has received no corroborating evidence beyond the extraction report to confirm that he or AG is the sender or recipient of the text messages, and (1) there was no lock on the phone allegedly belonging to AG; (2) AG's parents found the phone at least one day after her death; (3) no one witnessed AG or Bereznak sending the alleged text messages; and (4) an individual named Tim Rodney was with AG before, during, and after AG died and had full access to her phone. *Id.* at ¶¶ 10-15.

In addition, the PDMP database was queried pursuant to a Lackawanna County court order. (Doc. 15 at ¶ 9.) Soma (carisoprodol), one of the controlled substances Bereznak allegedly prescribed, was on the federal controlled substances list but not the Pennsylvania controlled substances list at the time Bereznak prescribed it. *Id.* at ¶ 4. By the time the court order was issued on March 17, 2017, Soma had been added to the Pennsylvania controlled substances list. *Id.* at ¶ 9. The search results included Bereznak's prescriptions for Soma. *Id.* at ¶ 11.

On March 12, 2018, the Government filed its Brief in Opposition (Doc. 18), and on March 14, 2018, Bereznak filed a Reply. (Doc. 21.) This Motion is therefore now ripe for disposition.

## II. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const. amend IV. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).

Bereznak seeks suppression of evidence seized from AG's cell phone after her parents turned it over to police, as well as records obtained from the PDMP pursuant to a Lackawanna County court order. The Government contends that Bereznak lacks standing to challenge either type of evidence. The proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n. 2 (1978). The applicable burden of proof is by a preponderance of the evidence. *United States v. Mastronardo*, 987 F.Supp.2d 565, 575 (E.D.Pa. 2013)(citing *United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974)).

**A. Text Messages**

Bereznak contends that the text messages obtained from AG's phone should be suppressed because (1) the warrantless search violated his Fourth Amendment constitutional rights and (2) the text messages have not been authenticated.

*1. Fourth Amendment Violation*

First, Bereznak argues that the search violated his Fourth Amendment rights because it was "directed at" him. (Doc. 16, p. 11.) This theory was explicitly rejected by the Supreme Court in *Rakas*. *See* 439 U.S. at 132-33 ("Adoption of the so-called 'target' theory advanced by petitioners [under which any criminal defendant at whom a search was 'directed' could contest the search] would in effect permit a defendant to assert that a violation of the Fourth Amendment rights of a third party entitled him to have evidence suppressed at his trial.[] We decline to extend the rule of standing in Fourth Amendment cases in the manner suggested by petitioners.").[1] "For nearly forty

---

[1] The Court ultimately also found that a party's capacity to challenge a search on Fourth Amendment grounds is a substantive Fourth Amendment issue rather than a standing issue. *See Rakas*, 439 U.S. at 140 ("[D]efinition of [Fourth Amendment] rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing. [] Analyzed in these terms, the

3

years, the Supreme Court has unwaveringly required the proponent of a motion to suppress to 'assert his own legal rights and interest rather than basing his claim for relief upon the rights of third parties.' This is black-letter law." *United States v. Stearn*, 597 F.3d 540, 552 (3d Cir. 2010)(quoting *Rakas*, 439 U.S. at 140). "Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted." *Rakas*, 439 U.S. at 133-34 (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134. Therefore, Bereznak cannot establish that his Fourth Amendment rights are implicated simply because the search of AG's phone sought information about him.

Bereznak argues that his own Fourth Amendment rights were violated by the search of AG's phone because he had a "reasonable expectation of privacy" in the messages he sent to AG, since he expected that only AG would read them. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also Kyllo v. United States*, 533 U.S. 27, 33 (2001)(a defendant seeking to challenge a search must show that society recognizes his subjective expectation of privacy as reasonable). While ownership of the searched property is not necessary to establish a reasonable expectation of privacy, a defendant generally must show that he exercised some control over the property in question. *Compare Rakas*, 439 U.S. at 133-34 (finding no legitimacy to a defendant's expectations of privacy where the area searched is in the control of a third party) with *United States v. Baker*, 221 F.3d 438, 442-43 (3d Cir.

---

question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it.")(internal citations omitted). I will therefore conduct the Fourth Amendment analysis under this framework rather than a standing framework.

4

2000)(an individual who borrows a car and has control over it has a legitimate expectation of privacy in it); *see also United States v. Brewer*, 708 F.App'x 96, 99 (3d Cir. 2017)("Because property rights are neither the beginning nor the end of [the Fourth Amendment] inquiry, a defendant who seeks to establish a subjective expectation of privacy in an object must show that he took normal precautions to maintain his privacy.")(internal citations and quotations omitted). The Third Circuit has held that a defendant does not have a reasonable expectation of privacy in call records stored on a cell phone over which another person claims ownership and control, and from which he does not maintain the ability to exclude others, even where the defendant is a listed subscriber of the phone. *See United States v. Brewer*, 708 F.App'x 96, 99 (3d Cir. 2017); *see also United States v. Monestime*, 677 F.App'x 76, 81 n. 4 (3d Cir. 2017)(concluding a defendant had no "Fourth Amendment-protected interest" in phone call records and contacts stored on a cell phone where he had testified that the phone was not his and that he had not used it on the day in question).

Of course, text messages often contain more intimate information than is revealed by a list of incoming and outgoing calls. There is a dearth of federal case law dealing directly with a defendant's expectation of privacy in sent text messages stored on another person's phone. However, courts appear to be in general agreement that there is no reasonable expectation of privacy in electronic content such as emails or pager messages once they are on a recipient's device. *See, e.g.*, *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007)("A person's reasonable expectation of privacy may be diminished in 'transmissions over the Internet or e-mail that have already arrived at the recipient.'")(quoting *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004)(finding no expectation of privacy in e-mail once received)); *United States v. Jones*, 149 F.App'x 954, 959 (11th Cir. 2005)(finding no reasonable expectation of privacy to prevent recipient from testifying as to contents of pager messages); *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001)("Users would [] lose a legitimate expectation of privacy in an e-mail that had already reached its recipient;

5

at this moment, the e-mailer would be analogous to a letter-writer, whose expectation of privacy ordinarily terminates upon delivery of the letter."). One reason for this is that once text messages have been received, the recipient could reveal them to anyone, and "[w]hat a person knowingly exposes to the public [] is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). The Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). In *United States v. Miller*, the Supreme Court found that a defendant "takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." 425 U.S. 435, 443 (1976). In holding that the respondent had no reasonable expectation of privacy in his bank records, the *Miller* Court noted that the Supreme Court "has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.*

Bereznak does not allege that he exercised any form of ownership or control over the phone.[2] In addition, by sending the text messages to AG, Bereznak assumed the risk that she would reveal the messages or their contents to others. Having assumed this risk, Bereznak cannot now claim that he has a reasonable expectation of

---

[2] Bereznak states for the first time in his Reply Brief (Doc. 21) that he asserts a possessory interest in AG's cell phone because he paid for the text messaging service on the phone. This fact is not stated anywhere in the record and is therefore not properly considered in evaluating the instant motion. Even if it were, Bereznak has not alleged that he exercised any control over the phone or ability to exclude others from using it, or that he took precautions to ensure the privacy of the phone. For example, Bereznak admits that there was no lock on the phone. (Doc. 15 at ¶ 11.) Therefore, even if I were to consider facts not properly before me, Bereznak fails to establish a reasonable expectation of privacy in the phone under *Brewer*. *See* 708 F.App'x at 99 (even where defendant was a listed subscriber of a cell phone, he had no expectation of privacy in the phone where it was seized from another person who claimed ownership and control over it, and the defendant did not establish that he maintained the ability to exclude others from the phone or took precautions to ensure the privacy of the phone).

privacy in the content of the messages stored on AG's phone. Since Bereznak has alleged no set of facts from which I could reasonably conclude he could state an expectation of privacy in the text messages found on AG's phone, no hearing is necessary on this subject. *See United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010)(Fed. R. Crim. P. 12(c) provides that courts "may" schedule a hearing on a motion to suppress, but "evidentiary hearings on such motions are not granted as a matter of course. [] To require a hearing a suppression motion must raise issues of fact material to the resolution of the defendant's constitutional claim.")(internal quotation omitted). Bereznak's motion to suppress the text messages on Fourth Amendment grounds will therefore be denied with prejudice.

### 2. Authentication

Finally, Bereznak argues that the text messages obtained from AG's phone should be suppressed because they have not been authenticated. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. Bereznak raises potential issues with authentication including: (1) there was no lock on the phone allegedly belonging to AG; (2) AG's parents found the phone at least one day after her death; (3) no one witnessed AG or Bereznak sending the alleged text messages; (4) an individual named Tim Rodney was with AG before, during, and after AG died and had full access to her phone; and (5) there is no corroborating evidence to show that AG and Bereznak were the actual senders or recipients of any of the messages.

Bereznak's arguments relating to authentication do not tend to suggest that the text messages were illegally obtained, but that they are not admissible at trial. I will therefore treat Bereznak's Motion to Suppress on this ground as a Motion in Limine to exclude the text messages for lack of authentication under Fed. R. Evid. 901. *See United States v. Wilk*, 572 F.3d 1229, 1236 (11th Cir. 2009)(finding magistrate judge properly treated a "motion to suppress" as a motion in limine to exclude evidence as

7

privileged under Fed. R. Evid. 501 because the defendant "did not address this issue in a Fourth Amendment context but rather treated the issue as an evidentiary matter."); *see also Black's Law Dictionary* (defining "motion to suppress" as "[a] request that the court prohibit the introduction of *illegally obtained* evidence at a criminal trial," while defining "motion in limine" as "[a] pretrial request that certain *inadmissible* evidence not be referred to or offered at trial.")(emphasis added).

The question whether evidence should be excluded from trial for lack of authentication does not necessitate a pre-trial hearing in this instance. Fed. R. Evid. 104(a) states that "[t]he court must decide any preliminary question about whether [] evidence is admissible." Motions in limine are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude unfairly prejudicial evidence. *See United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009). However, where it would not be unfairly prejudicial to do so, courts may admit evidence on the condition that it be authenticated at trial. *See* Fed. R. Evid. 104(b)("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."); *United States v. Browne*, 834 F.3d 403, 409 (3d Cir. 2016)("Because evidence can [be considered relevant] only if it is what the proponent claims it is, i.e., if it is authentic, [] Rule 901(a) treats preliminary questions of authentication and identification as matters of conditional relevance according to the standards of Rule 104(b).")(internal citations and quotations omitted); *see also Bernheisel v. Mikaya*, No. 13-1496, 2016 WL 4247795, at *3 (M.D.Pa. Aug. 9, 2016)(denying without prejudice plaintiff's motion in limine to exclude testimony where lack of information about what testimony the defendants might attempt to elicit at trial and the relevance of such testimony made motion premature); *United States v. Bacon*, No. 11-42, 2012 WL 5381415, at *4 (W.D.Pa. Oct. 31, 2012)(denying motion in limine to prohibit reference during trial to text messages which had not yet been authenticated, and noting that the

Government could present evidence to authenticate the messages at trial); *United States v. Manghan*, No. 11-45, 2012 WL 12919213, at *3 (W.D.Pa. Oct. 16, 2012)(same). Here, Bereznak makes no claim that it would be unfairly prejudicial to address this issue at trial, and I do not currently have any information about how the Government intends to authenticate the text messages, what it intends to show by their introduction at trial, or even whether it will use them at all. It would therefore be premature at this stage to resolve questions relating to the Government's ability to authenticate the text messages. Bereznak's motion in limine to exclude the text messages will therefore be denied without prejudice and without a hearing.

**B. Prescription Drug Monitoring Program ("PDMP") Data**

Bereznak also seeks to suppress the PDMP data on Fourth Amendment grounds. Bereznak argues that the search of these records returned results outside the scope of the Lackawanna County court order directing that they be released. (Doc. 15, Ex. B.) Specifically, Bereznak states that at the time he allegedly issued prescriptions for Soma (carisoprodol), Soma was not a controlled substance in Pennsylvania, and therefore, he argues, prescriptions for Soma should not have been included in the results turned over to the investigators and should be suppressed.

I note at the outset that the PDMP results containing Soma are in fact not outside the scope of the Lackawanna County court order. The court order states that "what is requested are *all* prescriptions entered into the system under the name and/or DEA number for the time period of Jan 1st, 2016 thru Aug 1st, 2016" (emphasis added). (Doc. 15, Ex. B.) On its face, the court order requests *all* of Bereznak's prescription data for the relevant time period, rather than requesting data only relating to those prescriptions which would have violated state law.

Further, "[i]t is a general rule that federal district courts [] decide evidence questions in federal criminal cases on the basis of federal, rather than state, law." *United States v. Rickus*, 737 F.2d 360, 363 (3d Cir. 1984)(citing *United States v. Shaffer*, 520 F.2d 1369, 1372 (3d Cir. 1975), *cert. denied sub nom. Vespe v. United*

9

*States*, 423 U.S. 1051 (1976)). Even assuming, without deciding, that the search of the PDMP data violated Pennsylvania state law, "evidence obtained in accordance with federal law is admissible in federal court – even though it was obtained in violation of state law." *Id.* at 363-64 (citing *Shaffer*, 520 F.2d at 1372); *see also United States v. Williams*, 124 F.3d 411, 427 (3d Cir. 1997)(whether state court would have ordered suppression of the evidence "makes no difference" in deciding whether evidence should be suppressed in federal case). Accordingly, the search of the PDMP records should be evaluated under federal law, i.e., the Fourth Amendment. *See United States v. Williams*, 570 F.App'x 137, 141-142 (3d Cir. 2014)(rejecting argument that search warrant was invalid because it failed to comply with Pennsylvania rules of Criminal Procedure and evaluating search for reasonableness under the Fourth Amendment).

As discussed *supra*, in order to show that a search occurred for Fourth Amendment purposes, Bereznak must first demonstrate that he had a subjective expectation of privacy in the prescription records which society was prepared to recognize as reasonable. *Kyllo*, 533 U.S. at 33. Bereznak makes no attempt to advance this point, and case law does not appear to support it. Individuals have a diminished expectation of privacy when they work in a pervasively regulated industry. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 627 (1989). While the Third Circuit has not decided the issue, it has noted that the Courts of Appeals for the Eighth, Ninth, and Sixth Circuits have held that the level of regulation of the pharmaceutical industry is sufficient to permit a warrantless search of a pharmacy under the Fourth Amendment. *See Wedgewood Village Pharm., Inc. v. United States*, 421 F.3d 263, 274 (3d Cir. 2005)(citing *United States v. Jamieson-McKames Pharms., Inc.*, 651 F.2d 532 (8th Cir. 1981); *United States v. Argent Chem. Labs., Inc.*, 93 F.3d 572 (9th Cir. 1996); and *United States v. Acklen*, 690 F.2d 70, 75 (6th Cir. 1982)). Doctors who prescribe substances controlled under the CSA are not entitled to a greater degree of privacy in their prescriptions than the pharmacists who fill them. *See United States v. Burka*, 700 F.Supp. 825, 828 (E.D.Pa. 1988)(stating that pharmacies are "pervasively

regulated" and finding that physicians dispensing controlled substances, like pharmacists, have a reduced expectation of privacy for purposes of administrative inspections of premises, including prescription records). In addition, the third party doctrine, discussed *supra*, counsels against finding that Bereznak had an expectation of privacy in his prescriptions. As a DEA registrant, Bereznak was aware that every prescription he wrote was recorded in a state database. He therefore could not have expected that this information would not be revealed to the government, since it was recorded by the government as a matter of course. I therefore find that Bereznak cannot show a Fourth Amendment violation with regard to the PDMP search, and his motion to suppress this information will be denied with prejudice and without a hearing.

### III. Conclusion

For the above stated reasons, Bereznak's Motion to Suppress will be denied. No hearing is necessary.

An appropriate order follows.

April 27, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge